UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NIKE, INC.,

Plaintiff,

-against-

CATHY CHIU LAM CHB INC. doing business as
ASIAN JADE CUSTOMS BROKERAGE; and
CATHY CHIU LAM, VARIOUS JOHN DOES,
JANE DOES and XYZ COMPANIES,

Defendants.

---

Civil Action No.

COMPLAINT

CV10- 1163

WEINSTEIN, J.

LEVY M.J

Plaintiff Nike, Inc. ("Nike"), by its attorneys Olshan Grundman Frome Rosenzweig & Wolosky LLP and Holihan Law allege on knowledge as to its own acts and otherwise on information and belief as follows:

**NATURE OF THE ACTION**

1. This is an action for trademark counterfeiting, trademark infringement, false designation of origin, trademark dilution, unfair competition, violation of the Tariff Act, and unlawful importation of goods bearing infringing/counterfeit marks in violation of the laws of the United States. Nike seeks an injunction, damages and related relief.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367. Plaintiff's claims are predicated upon the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq. Venue is properly founded in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

919993-1



## THE PARTIES

3.    Nike is an Oregon corporation and maintains its principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

4.    Defendant, Cathy Chiu Lam CHB Inc. doing business as Asian Jade Custom Brokerage ("Asian Jade") is a New York corporation with its principal place of business at 149-09 183rd Street, Room 208, Springfield Gardens, NY 11313. Asian Jade is a licensed Customs Broker who transacts business in and/or has contracted to import the infringing goods at issue in New York and in this judicial district (hereinafter Asian Jade and Lam are collectively referred to as the "Defendants").

5.    Defendant, Cathy Chiu Lam ("Lam"), is an individual residing within the State of New York. Lam is the moving, active, dominating and controlling force behind Asian Jade's infringing, counterfeiting and other wrongful activities hereinafter alleged, and personally participated in transactions alleged herein. Lam is a licensed Customs Broker who transacts business in and/or has contracted to import the infringing goods at issue in New York and in this judicial district (hereinafter Asian Jade and Lam are collectively referred to as the "Defendants").

6.    Due to the nature of Defendants' business practices, the identity of the various John Does, Jane Does and XYZ Companies is not presently known with the exception of Lam and Asian Jade. The Complaint herein will be amended, if appropriate, to include the name or names of said individuals and/or entities when such information becomes available.

## NIKE'S FAMOUS TRADEMARKS

7.    Since 1971, Nike has advertised, offered for sale, and sold footwear and other related products throughout the United States. Nike's sneakers have been widely advertised, offered for sale and sold throughout the United States under various distinctive trademarks, including

2

"NIKE," "NIKE AIR," the distinctive "Swoosh" Design, which sometimes is used in conjunction with the "NIKE" trademark or the "NIKE AIR" trademark, and the "Jumpman" Design trademark (collectively the "Nike Trademarks"). The Nike Trademarks have at all relevant times been owned by Nike or its predecessor.

8.   As a result of their exclusive and extensive use, the Nike Trademarks have acquired enormous value and recognition in the United States and throughout the world. The Nike Trademarks are well known to the consuming public and trade as identifying and distinguishing Nike exclusively and uniquely as the source of origin of the high quality products to which the marks are applied. The Nike Trademarks are both inherently distinctive and famous.

9.   The Nike Trademarks registered in the United States Patent and Trademark Office for footwear include the following:

| MARK | Registration Date | Registration No. |
|------|-------------------|------------------|
| NIKE | 2/19/74 | 978,952 |
| NIKE | 11/2/82 | 1,214,930 |
| NIKE AIR | 11/27/84 | 1,307,123 |
| SWOOSH DESIGN | 1/22/74 | 977,190 |
| SWOOSH DESIGN | 3/5/85 | 1,323,343 |
| SWOOSH DESIGN | 3/5/85 | 1,323,342 |
| NIKE & SWOOSH DESIGN | 3/19/85 | 1,325,938 |
| NIKE AIR & SWOOSH DESIGN | 7/3/84 | 1,284,386 |
| AIR & SWOOSH DESIGN | 6/3/97 | 2,068,075 |
| JUMPMAN | 9/26/89 | 1,558,100 |

10. The foregoing registrations have achieved incontestable status pursuant to 15 U.S.C. §1065. Nike also owns numerous registrations for the Nike Trademarks for goods and services other than footwear.

## DEFENDANTS' WRONGFUL ACTIVITIES

11. Defendants, without the consent of Nike, imported and/or distributed in interstate commerce footwear bearing unauthorized reproductions, copies, counterfeits and colorable imitations of the Nike Trademarks (the "Counterfeit Footwear").

12. In September 2008, Asian Jade filed entry documents with U.S. Customs ("Customs") for entry number KX2(########) (hereinafter referred to as the "Entry"), allowing for the importation of the Counterfeit Footwear into the United States.

13. The Entry consisted of 8,800 pairs of Counterfeit Footwear which were seized by Customs and valued at $298,206. A photograph of a sample of the Counterfeit Footwear has been annexed hereto as Exhibit A.

14. The Entry documents submitted to Customs by Defendants', identified HTT, 6207 Fort Hamilton Parkway, Brooklyn New York 11219 ("HTT"), as the Importer of Record and ultimate Consignee for the Counterfeit Footwear shipment. These documents were signed by Defendant "Cathy Chiu Lam as Attorney in Fact for HTT."

15. In order to file the Entry documents with Customs, Defendants were required to prove that they had a "sufficient interest" in the Entry goods and had exercised "due diligence" in obtaining authority via a Power of Attorney ("POA") from the HTT, Importer of Record, designating Defendants as their attorney in fact. This POA was obtained by Defendants and allegedly was executed by HTT. A copy of HTT's POA has been annexed hereto as Exhibit B.

16. Defendants were also required to use "reasonable care" in determining the nature of the goods covered by the Entry documents, to determine, among other things, whether the goods bore the trademarks of any U.S. company, before filing said Entry documents with Customs.

17. Despite Defendants' filing of the POA, professing to give it authority to make the Entry, HTT has denied that it ever executed a POA, has had any relationship with Defendants or has ever authorized Defendants to act on its behalf concerning the importation of any goods. Moreover, HTT has commenced an action entitled *HTT International, Inc. v. United Way International, Inc., Cathy Chiu Lam CHB d/b/a Asian Jade Custom Brokerage, and Tony Au*, Case No. 27025-2009, in New York Supreme Court against the Defendants and related entities. Plaintiff's alleged acts of conspiracy by Defendants to forge HTT signature on a POA for the express purpose of importing the Counterfeit Footwear in HTT's name.

18. Prior to the making of the Entry, Defendants failed to make any contact with HTT to confirm that HTT was importing the goods covered by the Entry, that HTT was aware of the Entry or that HTT had issued the POA to the Defendants.

19. Prior to the making of the Entry, Defendants failed to make any inquiry as to the nature of the Counterfeit Footwear including determining that the goods bore any Nike Trademarks.

20. Defendants' actions in filing the Entry documentation constitutes the proximate cause of the importation of the Counterfeit Footwear.

21. By filing the Entry documentation, Defendants deemed themselves to have sufficient interest in the Entry goods and to be responsible for their importation.

22. Defendants' actions in filing the Entry documentation and coordinating with Dewell Container Shipping Corp. for the further transportation of the Counterfeit Footwear covered by

the Entry was an act in furtherance of the distribution and ultimate sale of the Counterfeit Footwear.

23. The acts of Defendants in importing and distributing, in interstate commerce products bearing counterfeits of the Nike Trademarks: (a) are likely to cause confusion and mistake among the consuming public that all such products originate with Nike; (b) are likely to cause confusion and mistake among the consuming public that there is some affiliation, connection or association of Defendants with Nike; (c) are likely to cause confusion and mistake among the consuming public that said products and services are being offered to the consuming public with the sponsorship or approval of Nike; and/or (d) have caused and are likely to cause dilution of the distinctive quality of the Nike Trademarks.

24. Defendants imported and distributed the goods knowing the goods bore counterfeits of the Nike Trademarks, or willfully ignored whether the goods bore counterfeits of the Nike Trademarks. Defendants engaged in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of said goods and, to gain to Defendants, the benefit of the enormous goodwill associated with the Nike Trademarks. The aforementioned acts of Defendants are also likely to dilute, and have diluted, the distinctive quality of the Nike Trademarks.

## FIRST CLAIM FOR RELIEF
## (TRADEMARK COUNTERFEITING)

25. Nike repeats each and every allegation set forth in paragraphs 1 through 24 above as if fully set forth herein.

26. The Nike Trademarks, as they are being used by Defendants, are identical to or substantially indistinguishable from the registered Nike Trademarks. Accordingly, Defendants have engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114.

27. Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## (TRADEMARK INFRINGEMENT)

28. Nike repeats each and every allegation set forth in paragraphs 1 through 27 above as if fully set forth herein.

29. Defendants' use of the Nike Trademarks, without Nike's consent, constitutes trademark infringement in violation of 15 U.S.C. § 1114, in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source, approval or sponsorship of footwear and other products bearing counterfeit and infringing Nike Trademarks.

30. Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

919993-1

7

## THIRD CLAIM FOR RELIEF
## (FALSE DESIGNATION OF ORIGIN)

31.  Nike repeats each and every allegation set forth in paragraphs 1 through 30 above as if fully set forth herein.

32.  Defendants' use of the Nike Trademarks, without Nike's consent, constitutes the use of false or misleading designations of origin and/or the making of false or misleading representations of fact in violation of 15 U.S.C. § 1125(a), in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source, approval or sponsorship of the footwear imported and distributed by Defendants bearing counterfeit and infringing Nike Trademarks.

33.  Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
## (FEDERAL TRADEMARK DILUTION)

34.  Nike repeats each and every allegation set forth in paragraphs 1 through 33 above as if fully set forth herein.

35.  The Nike Trademarks are famous and inherently distinctive.  Nike and its predecessors in interest, in connection with the promotion and sale of their products, have used the Nike Trademarks for decades on both a national and international basis.  As a result of Nike's extensive and substantial promotion of the Nike Trademarks, the consuming public and trade have come to associate these Nike Trademarks uniquely and distinctly with Nike and its high quality merchandise.

36.   Long after the Nike Trademarks became famous, Defendants, without authority from Nike, used unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks and thereby caused, and are causing, the actual dilution of the distinctive qualities of these registered trademarks.

37.   As a result, Defendants have engaged in trademark dilution in violation of 15 U.S.C. § 1125(c).

38.   Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## IMPORTATION OF GOODS BEARING INFRINGING MARKS OR NAMES

39.   Nike repeats each and every allegation set forth in paragraphs 1 through 38 above as if fully set forth herein.

40.   Defendants imported Counterfeit Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the NIKE Trademarks in violation of 15 U.S.C. §1124

41.   Defendants' have materially contributed to the importation of Counterfeit Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the NIKE Trademarks.

42.   Defendants' have realized gains and profits from the importation, or assisting in the importation, of the Counterfeit Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the NIKE Trademarks.

43.  Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF TARIFF ACT

44.  Nike repeats each and every allegation set forth in paragraphs 1 through 43 above as if fully set forth herein.

45.  Defendants imported Counterfeit Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the NIKE Trademarks in violation of the 19 U.S.C. § 1526(a).

46.  Nike has filed copies of its federal trademark registrations covering of one or more of the NIKE Trademarks with the Department of Treasury and U.S. Customs.

47.  Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

WHEREFORE, Nike demands judgment as follows:

48.  Permanently enjoining and restraining Defendants, their respective subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them from:

(a)     imitating, copying or making unauthorized use of the Nike Trademarks;

(b)     manufacturing, importing, exporting, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product bearing any unauthorized reproduction, copy or colorable imitation of the Nike Trademarks;

919993-1

(c)      using any unauthorized reproduction, counterfeit, copy of colorable imitation of the Nike Trademarks in connection with the manufacture, promotion, advertisement, display, sale, offering for sale, production, import, export, circulation or distribution of any product in such manner as to relate or connect, or tend to relate or connect, such product in any way with Nike or to any goods sold, sponsored, approved by, or connected with Nike;

(d)      using any unauthorized reproduction, counterfeit, copy and colorable imitation of the Nike Trademarks in connection with the manufacture, promotion, advertisement, display, sale, offering for sale, production, import, export, circulation or distribution of any product which dilutes or is likely to dilute Nike's image, trade names or reputation or the distinctive quality of the Nike Trademarks;

(e)      engaging in any other activity constituting unfair competition with Nike, or constituting an infringement of the Nike Trademarks or of Nike's rights in, or its right to use or exploit such trademarks, or constituting dilution of the Nike Trademarks, and the reputation and the goodwill associated therewith;

(f)      making any statement or representation whatsoever, with respect to the infringing goods in issue, that falsely designates the origin of the goods as those of Nike, or that is false or misleading with respect to Nike; and

(g)      engaging in any other activity, including the effectuation of assignments or transfers of its interests in unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks, the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purpose of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsections 1(a) through 1(f) above.

919993-1

49.  Directing Defendants to deliver for destruction all products, labels, tags, artwork, prints, signs, packages, dies, plates, molds, matrices and any other means of production, wrappers, receptacles and advertisements in their possession, custody or control bearing resemblance to the Nike Trademarks and/or any unauthorized reproductions, copies, or colorable imitations thereof.

50.  Directing such other relief as the Court may deem appropriate to prevent any erroneous impression among the trade and/or public that any product at issue in this case that has been offered for sale, sold or otherwise circulated or promoted by Defendants is authorized by Nike or is related to or associated in any way with Nike's products.

51.  Requiring Defendants to account and pay over to Nike, all profits realized by their wrongful acts and directing that such profits be trebled due to Defendants' willful actions.

52.  Awarding Nike, at its election, statutory damages in the amount of $2,000,000 per mark for each type of good in connection with which Defendants used counterfeits of the Nike Trademarks.

53.  Awarding Nike its costs and reasonable attorneys' and investigatory fees and expenses, together with pre-judgment interest.

54.  Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

55. Awarding Nike such other and further relief as the Court may deem just and proper.

Dated: New York, New York

March 11, 2010

By: _____

Martin J. Feinberg
Olshan Grundman Frome Rosenzweig &
Wolosky LLP
Park Avenue Tower, 65 East 55th Street,
New York, New York 10022
(212) 451-2300
(212) 451-2222 (fax)
*Attorneys for Plaintiff, Nike Inc.*

and

Michael W.O. Holihan
Holihan Law
1101 North Lake Destiny Road, Suite 350
Maitland, FL 32751
(407) 660-8575
*Of Counsel for Plaintiff, Nike Inc.*

919993-1

13



TOTAL P.01

## CATHY CHIU LAM CHB, DBA
## ASIAN JADE CUSTOMS BROKERAGE

### CUSTOMS POWER OF ATTORNEY

145-19 147th STREET, ROOM # 208
SPRINGFIELD GARDENS, NY 11413
TEL: 718-995-5030
FAX: 718-995-5040

SSN: _____

IRS #: _20-3863527_

Check appropriate box:
☐ Individual
☐ Partnership
☐ Corporation
☐ Sole Proprietorship

KNOW ALL MEN BY THESE PRESENTS That, _HTT Int'l Inc_
(Full name of person, partnership, or corporation, or sole proprietorship (identify))

a corporation doing business under the laws of the State of _New York_, or a ____

doing business as ____

residing at ____

having its office and place of business at _6207 Fort Hamilton Pkwy, Bklyn, NY 11219_

CATHY CHIU LAM CHB DBA ASIAN JADE CUSTOMS BROKERAGE
(Give full name of each agent designated)

hereby constitutes and appoints each of the following persons

[body legal text of power of attorney — faded]

IN WITNESS WHEREOF, the said _____ has caused these presents to be sealed and signed (Signature)

(Capacity) _President_

WITNESS ____

Date _March 4, 2007_

(Corporate seal)

ABF RS
CTRL #0965
37237 4590

ASIAN JADE C H B          17:21          JUL 22 2009

718 9955040          P.02/08