```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

                                                                    **FILED**
                                                            IN CLERK'S OFFICE
                                                       U.S. DISTRICT COURT E.D.N.Y.

NIKE, INC.,                              **MEMORANDUM**       ★ MAR 19 2012 ★
                                         **& ORDER**
        Plaintiff,                          BROOKLYN OFFICE

— against —                              10-CV-1163

STEVE KWAI AU, a/k/a TONY AU, a/k/a/
TONY KAU, a/k/a STEVE K AU

        Defendant.

**Appearances:**

For the plaintiff:        Martin Jon Feinberg
                          Olshan Grundman Frome Rosenzweig & Wolosky LLP
                          65 East 55th Street
                          New York, NY 10022

                          Michael Walls Holihan
                          Holihan Law
                          1101 North Lake Destiny Road, Suite 275
                          Maitland, FL 32751

                          Safia Anisa Anand
                          Olshan Grundman Frome Rosenweig & Wolosky LLP
                          65 East 55th Street
                          New York, NY 10022

For the defendant:        Hugh H Mo
                          The Law Firm of Hugh H. Mo, P.C.
                          225 Broadway, Suite 2702
                          New York, NY 10007



1

**JACK B. WEINSTEIN, Senior United States District Judge:**

### I. Introduction

This case arises out of a seizure of 8,800 pairs of shoes allegedly bearing Nike, Inc. trademarks at the port of Newark, NJ by U.S. Customs and Border Protection (the "Primary Entry"). The shoes were imported under the name HTT International, Inc. ("HTT"). Plaintiff Nike, Inc. ("Nike") initially brought claims against several corporations and individuals involved in the customs and shipping businesses for trademark counterfeiting, trademark infringement, false designation of origin, trademark dilution, importation of goods bearing infringing marks, and violation of the Tariff Act. These defendants included U-Freight, Inc. ("U-Freight"), a freight forwarding and warehouse logistics company that provided comprehensive transportation services for HTT, including clearing goods through customs; Steve Kwai Au a/k/a Tony Au a/k/a Tony Kau a/k/a Steve K Au ("Au"), a U-Freight employee who coordinated freight forwarding services for HTT shipments from China; Cathy Chiu Lam CHB Inc. d/b/a Asian Jade Customs Brokerage ("Asian Jade"), a customs broker; and Cathy Chiu Lam, the owner of Asian Jade.

All of the defendants except Au have either settled with, or been voluntarily dismissed by, Nike. *See* Notice of Voluntary Dismissal, Doc. Entry 36, Aug. 23, 2010 (voluntarily dismissing defendant U-Freight of America, Inc.); Order Dismissing Case, Doc. Entry 111, Oct. 18, 2011 (settling case with defendants Cathy Chiu Lam CHB Inc. d/b/a Asian Jade Customs Brokerage and Cathy Chiu Lam). These defendants have since provided sworn deposition testimony that implicates Au as the orchestrator of the counterfeit shoe importation. *See generally* Pl.'s 56.1 Statement, Doc. Entry 118, Jan. 23, 2012.

For the reasons set forth below, plaintiff's motion for summary judgment against Au is denied.

## II. Facts and Contentions

Nike argues that HTT and U-Freight convincingly deny any knowledge of or involvement in the Primary Entry. It claims that Au forged a power of attorney (POA) from HTT, as well as entry documents, to facilitate the transaction. *See* Pl.'s 56.1 Statement ¶¶ 27-30, Doc. Entry 118, Jan. 23, 2012. Asian Jade relied on these fraudulent shipping documents, which identified the Primary Entry as lighting fixtures, to create entry documents for the Primary Entry. *Id.* ¶¶ 25, 30. In support of its motion, Nike relies upon testimony by Hu, an HTT employee, and Lam that Au admitted: 1) that he stole HTT's identity in order to smuggle in counterfeit Nike shoes; and 2) that the HTT POA was forged and that he caused it to be forged. *Id.* ¶¶ 31-34. There is deposition testimony from three other non-party companies that Au passed on POAs or shipping documents to Asian Jade that fraudulently used their names. *Id.* ¶ 46.

At his deposition, Au repeatedly asserted his right against self-incrimination. *See id.* ¶ 47 (stating that "Au asserted his Fifth Amendment right against incrimination over 300 times during his deposition held on September 30, 2011"); *see generally* Def.'s 56.1 Statement, Doc. Entry 120, Feb. 15, 2012 (asserting his right against self-incrimination). He does not dispute that the shoes seized are counterfeit, or that the marks they bear infringe on Nike's copyrights.

The defendant has not come forward with any affirmative evidence to refute Nike's account of events. Rather, he argues that the statements made by HTT, U-Freight, Asian Jade, Hu, and Lam are self-serving and therefore not credible. He also claims that Hu's and Lam's testimony regarding his admissions are inadmissible as hearsay. He contends that granting summary judgment in favor of Nike would impermissibly sanction his exercise of his Fifth Amendment privilege against self-incrimination.

### III. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see, e.g., Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). It is warranted when, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 247-50, 255.

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). In reviewing the record:

> [T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe. . . . That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (internal citations and quotations omitted). Evidence supporting the moving party that comes from interested witnesses need not be credited, as such evidence raises questions of credibility that are best left for the jury. *Cf. Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

### IV. Application of Law to Facts

There remain genuine issues of material fact as to Au's involvement in the Primary Entry, even though plaintiff has made a strong case in its favor. Au's statements to Hu and Lam

4

will probably be admitted. And, if the proffered witnesses are believed, it is highly unlikely that the defendant will escape an unfavorable verdict.

Nevertheless, plaintiff's case turns on the credibility of the testimony of Hu, Lam, and U-Freight. Lam, her company Asian Jade, and U-Freight were accused of complicity in the amended complaint. HTT, Hu's employer, may also have participated in the transaction. A juror might conceivably conclude that these witnesses and former defendants were testifying against Au to avoid their own liability.

Defendant Au has not come forward with facts to dispute their testimony. Technically, he has not met his obligations to do so under the summary judgment rule. Yet, the history of this case provides a slight basis for arguing that these witnesses and former defendants have an incentive to fabricate their testimony in order to avoid their own liability. Such credibility determinations should be made by the jury.

## V. Conclusion

The motion for summary judgment is denied.

All *in limine* motions shall be heard on April 30, 2012 at 10:00 a.m. If necessary, a *Daubert* hearing will also be held based on any expert reports previously exchanged. *See* Fed. R. Civ. P. Rule 26(2).

Parties shall submit briefs on their *in limine* and other motions no later than April 23, 2012. By that same day, they shall file proposed jury charges, together with any appropriate supporting briefs, and exchange: (1) lists of pre-marked documents proposed for use at trial, together with copies of *all documents*; (2) lists of potential witnesses, together with summaries of proposed testimony; and (3) stipulations with respect to all undisputed facts. Copies shall be simultaneously filed and docketed.

5

Jury selection by the magistrate judge shall begin on May 7, 2012. Trial shall commence the same day.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: March 16, 2012
Brooklyn, New York